**GREGORY R. GILBERT, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2008-034
Supreme Court of the Virgin Islands
October 6, 2009

351

MARTIAL A. WEBSTER, ESQ., Law Office of Martial A. Webster, St. Croix, USVI, *Attorney for Appellant.*

MATTHEW PHELAN, ESQ. DOLACE MCLEAN, ESQ., Assistant Attorney Generals, St. Thomas, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*. SWAN, *Associate Justice*, dissenting.

## OPINION OF THE COURT

(October 6, 2009)

HODGE, C.J. Appellant Gregory R. Gilbert (hereafter "Gilbert") requests that this Court overturn his conviction for aggravated rape in the

second degree pursuant to title 14, section 1700a(a) of the Virgin Island Code and deem him acquitted on the grounds that the evidence was insufficient for a conviction beyond a reasonable doubt and that the trial court erroneously instructed the jury on the essential elements of the crime. For the following reasons, we overturn Gilbert's conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2005, the victim, "L.M.," attended, along with three other females, a massage therapy course Gilbert offered in his home. On June 24, 2008, Gilbert pulled her aside after class and told her that she was falling behind and would need to come to his house to receive extra assistance. The following day, L.M. returned to Gilbert's house, where she was greeted by Gilbert, who was only wearing a pair of sweat pants. After L.M. performed a massage routine on him, Gilbert performed oral sex on and had vaginal intercourse with her. Subsequently, Gilbert told L.M. that "nothing wrong happened" because she was now his girlfriend. At the time of this incident, L.M. was seventeen years old while Gilbert was twenty-nine years-old.

After informing her boyfriend about the assault, L.M. received treatment at the hospital and informed the police of the incident. L.M. alleged that the sex was not consensual and that Gilbert had forced himself upon her. The police questioned Gilbert, who admitted that he had sex with L.M. and that he knew that L.M. was only seventeen years-old. Gilbert told the police that he believed the sex was consensual because he was under the impression that L.M. was his girlfriend at the time. Gilbert was subsequently charged in a four-count information with three counts of aggravated rape in the second degree in violation of title 14, section 1700a(a)[1] and one count of unlawful sexual contact in the first degree in violation of title 14, section 1708(1).[2]

Gilbert's trial began on November 13, 2007. At trial, Gilbert objected to the trial court's interpretation of the elements required to convict

---

[1]  Count one charged that Gilbert committed aggravated rape in the second degree by inserting his finger into L.M.'s vagina. Counts two and three charged, respectively, that Gilbert committed the offense by inserting his penis into L.M.'s vagina and by performing oral sex on L.M.'s vagina.

[2]  Count four charged that Gilbert committed an act of sexual contact upon L.M. and used coercion to accomplish the sexual contact.

Gilbert on the charges of aggravated rape in the second degree, and also objected to the trial court's jury instructions on the elements of aggravated rape in the second degree. On November 16, 2007, the jury acquitted Gilbert on counts one, three, and four of the information, but found him guilty of count two, which was one of the counts of aggravated rape in the second degree. Gilbert subsequently filed a motion for judgment of acquittal/new trial, which was denied on March 4, 2008. Gilbert appeared for a sentencing hearing on April 9, 2008, and was sentenced to twenty years incarceration. Gilbert filed his notice of appeal on April 11, 2008, and the judgment formally sentencing him was entered on April 29, 2008.

## II. JURISDICTION AND STANDARD OF REVIEW

"The Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4 § 32(a). The order sentencing Gilbert was entered on April 29, 2008, and Gilbert's notice of appeal was filed on April 11, 2008. "A notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." V.I. S. CT. R. 5(b)(1). Accordingly, the notice of appeal was timely filed. *See id.*

When reviewing a defendant's challenge of the sufficiency of the evidence, this Court views all evidence in the light most favorable to the government. *See Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009). "Appellate reversal on the grounds of insufficient evidence should be confined to cases where the failure of the prosecution is clear. The evidence need not be inconsistent with every conclusion save that of guilty, so long as it establishes a case from which a jury could find the defendant guilty beyond a reasonable doubt." *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1996). Although a trial court's refusal to give certain jury instructions is usually reviewed on an abuse of discretion standard, when "the question is whether the jury instructions failed to state the proper legal standard, this court's review is plenary." *Gov't of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1180 (3d Cir. 1995). Likewise, this Court's review of the trial court's construction of a statute is plenary. *V.I. Public Services Commission v. V.I. Water and Power Authority*, 49 V.I. 478, 482 (V.I. 2008).

## III. DISCUSSION

Although Gilbert asserts multiple grounds for overturning his conviction, each purported error is based on the premise that both the People of the Virgin Islands (hereafter "People") and the trial court ignored a required element for a conviction of aggravated rape in the second degree. We agree. For the foregoing reasons, we shall overturn Gilbert's conviction for aggravated rape in the second degree and deem him acquitted.

### A. Rape in the Second Degree and Aggravated Rape in the Second Degree

Gilbert alleges that the aggravated rape in the second degree statute leads to an absurd consequence because the statute, when read literally, requires the People to prove fewer elements than for rape in the second degree, yet imposes substantially higher minimum and maximum sentences.[3] The statute codifying rape in the second degree reads, in pertinent part:

> Any person over 18 years of age who perpetrates under circumstances not amounting to rape in the first degree, an act of sexual intercourse or sodomy with a person not the perpetrator's spouse who is at least 16 years but less than 18 years of age, and the perpetrator is 5 years or older than the victim, is guilty of rape in the second degree and shall be imprisoned not more than 10 years.

14 V.I.C. § 1702(a). However, the statute codifying the offense of aggravated rape in the second degree reads as follows:

> Whoever perpetrates an act of sexual intercourse or sodomy with a person who is under eighteen years but thirteen years or older and not the perpetrator's spouse, *or by force, intimidation, or the perpetrator's position of authority over the victim is used to accomplish the sexual act*, is guilty of aggravated rape in the second degree and shall be imprisoned for life or for any term in years, but not less than 10 years.

---

[3]   *Compare* 14 V.I.C. § 1700a(a) (stating that whoever is convicted of aggravated rape in the second degree "shall be imprisoned for life or for any term in years, but not less than 10 years.") *with* 14 V.I.C. § 1702(a) (stating that an individual convicted of rape in the second degree "shall be imprisoned not more than 10 years.").

14 V.I.C. § 1700a(a) (emphasis added).

The parties strongly disagree as to the meaning of the italicized clause. According to the People, "the use of the word 'or' means that a court is required to read the subordinate clause dealing with 'force, intimidation, or the perpetrator's position of authority' as itemizing separate factors under the statute that (in conjunction with the act of sexual intercourse with someone [under eighteen but over thirteen] who is not a spouse) the Government may use as alternatives to prove that an aggravated rape in the second degree occurred," and thus "the required elements of an aggravated rape charge do not require any additional factors such as force or intimidation." (Appellee's Br. at 9.) In contrast, Gilbert contends that the offense of "aggravated" rape in the second degree must inherently contain "aggravating" factors that distinguish it from rape in the second degree. Gilbert therefore argues that this Court should interpret section 1700a(a) so that the aggravating factors are either the age of the victim (under sixteen but over thirteen) or the use of force, intimidation, or the perpetrator's position of authority over the victim to accomplish the sexual act.

"[I]n construing a statute, if the intent of the Legislature is clear, that is the end of the matter." *In re Infant Sherman*, 49 V.I. 452, 456 (V.I. 2008) (citations and internal quotations omitted). However, when a statute codifying a criminal offense is ambiguous, the ambiguity is resolved in favor of the criminal defendant. *Gov't of the Virgin Islands v. Knight*, 28 V.I. 249, 259, 989 F.2d 619 (3d Cir. 1993). A statute should not be construed and applied in such a way that would result in injustice or absurd consequences. *American Dredging Co. v. Local 25, Marine Division, Int'l Union of Operating Engineers*, 338 F.2d 837, 842-43 (3d Cir. 1964) (collecting cases). Furthermore, "[a]lthough literal interpretation [of a statute] is favored, 'the intention prevails over the letter,'" and thus "no [statute] should be read literally if such a reading is contrary to its objective." *Knight*, 989 F.2d at 626 (quoting 2A N. SINGER, *Sutherland Statutory Construction* § 46.07, at 126 (5th ed. 1992)). In addition, this Court must presume that "[w]hen the legislature adopts a law . . . it intended that the entire statute be effective." *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995). Because section 1700a is a criminal statute, this Court must consider whether applying the statute's literal language leads to injustice or absurd consequences or is otherwise inconsistent with the Legislature's intent.

## B. Section 1700a Does Not Comport with the Uncontested Intent of the Legislature

· ■ "For the vast majority of ambiguous statutory provisions . . . relying on legislative history to discern legislative intent should be done with caution," since many "men and women must vote in favor of a bill in order for it to become law." *Morgan v. Gay*, 466 F.3d 276, 278 (3d Cir. 2006). "However, in that rare instance where it is *uncontested* that legislative intent is at odds with the literal terms of the statute, then a court's primary role is to effectuate the intent of [the Legislature] even if a word in the statute instructs otherwise." *Id* (emphasis added).

■ As a starting point, this Court must consider that the Legislature labeled the offense codified in section 1700a(a) as "aggravated rape in the second degree." "Common sense and standard English grammar dictate that when an adjective — such as 'aggravated' — modifies a noun . . . the combination of the terms delineates a *subset* of the noun. One would never suggest, for example, that by adding the adjective 'blue' to the noun 'car,' one could be attempting to define items that are not, in the first instance, cars." *United States v. Ponce-Casalez*, 212 F. Supp. 2d 42, 46 (D.R.I. 2002) (quoting *United States v. Pacheco*, 225 F.3d 148, 157 (2d Cir. 2000) (Straub, J., dissenting)) (emphasis added). Black's Law Dictionary defines an "aggravated" crime as one that is "made worse or more serious by circumstances." BLACK'S LAW DICTIONARY 71 (8th ed. 2004). Thus, the presence of the phrase "aggravated rape in the second degree" in section 1700a(a) indicates the Legislature's intent to impose a harsher penalty for a "rape in the second degree" that is somehow "made worse or more serious" due to the presence of an additional element not required to prove rape in the second degree pursuant to section 1702(a). Adopting the People's position, and by extension holding that every rape in the second degree is an aggravated rape, would not only render section 1702(a) meaningless, but essentially write the word "aggravated" out of section § 1700a(a).

■ The Child Protection Act of 2002's legislative history also clearly demonstrates that the Legislature did not intend for every crime chargeable under section 1702(a) to also be chargeable under section 1700a(a). During a May 10, 2001 public hearing held by the legislature's Committee on Government Operations, most of the senators present expressly stated that, in amending section 1702, they wished to indirectly

357

raise the age of consent from sixteen to eighteen by criminalizing consensual sexual relations between sixteen and seventeen year-olds and adults, but only so long as an eighteen or nineteen year-old could not be prosecuted for having consensual sex with his sixteen or seventeen year-old girlfriend. *See* V.I. Committee on Gov't Operations, 2001 Sess., May 10, Pt. III at 23 (statement of Senator Cole, chairman of the committee); *id.* at Pt. III at 86 (statement of Senator Dowe, vice chairman, arguing same); *id.* at Pt. IV at 4 (statement of Senator Pickard-Samuel, arguing same); *id.* at Pt. IV at 31 (statement of Senator White, arguing same); *id.* at Pt. III at 94 (statement of Senator Alicia Hansen, arguing against any criminalization of consensual sex involving sixteen year-olds). Likewise, the testimony of witnesses present at this hearing overwhelmingly supported this conclusion. *See id.* at Pt. III at 30 (testimony of Attorney General Stridiron arguing against criminalizing consensual sexual relations between eighteen year-olds and seventeen year-olds); *id.* at Pt. III at 49 (testimony of Carlton Stevens, on behalf of the Domestic Violence Coordinating Council, arguing same); *id.* at Pt. III at 61 (testimony of Michael Rhymer, on behalf of the Family Resource Center, stating that consensual sex between twenty-one year-old and victim under eighteen but over thirteen should only result in incarceration for one year). It was in response to these concerns that an "Age Gap" amendment was subsequently added to criminalize consensual sexual relations between adults and minors over sixteen but under eighteen only if the perpetrator was over eighteen and five years or older than the victim. *See* V.I. Committee on Gov't Operations, 2001 Sess., Nov. 14, at 23; *see also* V.I. Proc., 2002 Sess., Jan. 31, 2002, at 90-91 (statement of Senator Cole, prior to final vote, that Child Protection Act would not authorize prosecution of eighteen year-olds who have consensual sex with seventeen year-olds, but would allow prosecution of twenty-five year-olds who prey on that age group). Significantly, no senators stated that the purpose of section 1700a was to criminalize consensual sexual relations between eighteen year-olds and seventeen year-olds.

In addition to imposing new criminal penalties for older adults having consensual sex with minors over sixteen but less than eighteen years of age, the Legislature also intended to raise existing penalties for sexual acts — consensual or otherwise — between adult perpetrators and children under sixteen years of age by imposing mandatory minimum sentences. *See, e.g.,* V.I. Committee on Gov't Operations, 2001 Sess.,

May 10, Pt. III at 25 (statement of Senator Berry, one of the bill's co-sponsors, quoting several newspaper articles indicating low sentences defendants received for the rape of minors). Furthermore, Senator Cole expressly stated that the Child Protection Act of 2002 was modeled after the statutory rape statutes enacted by the states of Maryland[4] and Washington,[5] which have multiple rape and sexual misconduct statutes where the age of the victim is one of several potentially aggravating factors (such as the use of force or abuse of one's position of authority) that determine under which particular statute one is charged.

■ ■ Given the uncontested legislative history, the People's interpretation of section 1700a(a) would clearly lead to absurd consequences the Legislature could not have intended. Notably, a literal interpretation of section 1700a — which does not contain any "Age Gap" provisions — would authorize the prosecution of eighteen year-olds who have consensual sex with seventeen year-olds, and, at a minimum, subject

---

[4] *See* MD. CODE., CRIMINAL LAW, §§ 3-303 (rape in the first degree, requiring both force or threat of force and another aggravating factor, such as use of a dangerous weapon or infliction of serious physical injury); 3-304 (rape in the second degree, requiring force or a victim who is over thirteen but under fourteen or mentally defective); 3-305 (sexual offense in the first degree, requiring two aggravating factor that mirror rape in the first degree); 3-306 (sexual offense in the second degree, requiring an aggravating factor that mirrors rape in the second degree); 3-307 (sexual offense in the third degree, criminalizing sexual acts where the victim is over fourteen or fifteen years-old and the offender is at least twenty-one years-old); 3-308 (sexual offense in the fourth degree, which criminalizes sexual acts committed by a perpetrator who abuses a position of authority).

[5] *See* WASH. REV. CODE §§ 9A.44.040 (rape in the first degree, requiring one of several aggravating factors such as use of a deadly weapon or serious physical injury); 9A.44.050 (rape in the second degree, requiring an aggravating factor such as use of force or a victim who is mentally incapacitated); 9A.44.060 (rape in the third degree, only requiring that the victim did not consent or that property rights were threatened); 9A.44.073 (rape of a child in the first degree, requiring that the victim be under twelve years-old and the perpetrator be twenty-four months older than the victim); 9A.44.076 (rape of a child in the second degree, requiring a victim that is over twelve but under fourteen and a perpetrator who is thirty-six months older than the victim); 9A.44.079 (rape of a child in the third degree, requiring a victim who is at least fourteen but under sixteen and a perpetrator who is at least forty-eight months older than the victim); 9A.44.083 (child molestation in the first degree, requiring a victim who is under twelve years-old and a perpetrator who is at least thirty-six months older than the victim); 9A.44.086 (child molestation in the second degree, requiring a victim who is over twelve but less than fourteen and a perpetrator who is at least thirty-six months older than the victim); 9A.44.089 (child molestation in the third degree, requiring a victim who is over fourteen but less than sixteen and a perpetrator who is at least thirty-six months older than the victim).

those eighteen year-olds to a mandatory ten-year prison sentence.[6] Likewise, although the Legislature clearly intended to punish older adults who have sexual relations with children under the age of sixteen more harshly than those who have consensual sex with sixteen and seventeen year-olds, the People's interpretation of section 1700a would impose the same minimum punishment on both types of offenders. Based on this legislative history, and the Legislature's explicit invocation of the Maryland and Washington statutes, the Legislature clearly did not intend either of these outcomes. Furthermore, given that sections 1700a and 1702 were both enacted as part of the Child Protection Act of 2002 yet contain significantly divergent minimum and maximum sentences, a strong presumption exists that the Legislature intended section 1702 to serve some independent purpose and that every crime under section 1702 would not merely become subsumed into section 1700a.[7] *See Halliburton*, 539 N.W.2d at 344. Accordingly, this Court rejects the People's argument and holds that, with respect to a seventeen year-old

---

[6] The dissent cites the lack of an "Age Gap" provision in section 1700a as an example of how that statute may be distinguished from section 1702, for "[a] sixteen, seventeen, eighteen, nineteen, or twenty year-old cannot be convicted of violating section 1702(a) . . . . [h]owever, the same sixteen, seventeen, eighteen, nineteen, or twenty year-old perpetrator can be convicted of violating section 1700a(a)." (Dissenting Op. at 7.) However, given that the uncontested legislative history demonstrates that the Legislature did not intend for eighteen to twenty year-olds to be prosecuted under *any* statute — let alone the statute codifying what the dissent recognizes as "the *more serious* crime" — for consensual sexual relations with their sixteen or seventeen year-old peers, the fact that the People's proposed interpretation of section 1700a would allow prosecutions that the Legislature, speaking with one voice, clearly and unambiguously did not intend to authorize provides strong support for the proposition that a mistake has been made and that the statute as written is contrary to its objective. *Knight*, 989 F.2d at 626.

[7] The dissent argues that the Legislature, in enacting sections 1700a and 1702, intended for prosecutors to have the discretion to charge a defendant under either statute. (Dissenting Op. at 17.) However, no support for this proposition exists in the statutes themselves or their legislative history. On the contrary, the fact that the Legislature expressly modeled sections 1700a and 1702 after child rape statutes enacted by Maryland and Washington — which largely eliminate prosecutorial discretion by coalescing offenses and penalties with the number of aggravating factors and non-overlapping ages of the victim — indicates that the Legislature did not intend to grant prosecutors the choice of prosecuting individuals like Gilbert under either section 1700a or section 1702 when the age of the victim is seventeen and no aggravating factors are alleged.

victim,[8] the Legislature intended to require the People to prove use of force, intimidation, or abuse of a position of authority to sustain a conviction pursuant to section 1700a. *See Knight*, 989 F.2d at 626; *People v. Skinner*, 704 P.2d 752, 758 (Cal. 1985).

## C. The Errors in this Case Justify Overturning Gilbert's Conviction

Because L.M. was seventeen years-old at the time of the incident, the People, consistent with the intent of the Legislature, were required to prove that Gilbert used force, intimidation, or his position of authority to coerce L.M. to have intercourse with him in order to sustain a conviction for aggravated rape in the second degree. However, the People's information did not allege such an element. *See Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974) (holding that the information must set forth each element of the crime that it charges as well as fairly inform a defendant of the charge against which he must defend.) Furthermore, the trial court's jury instructions also omitted this required element.

■ A jury instruction that omits a required element of the offense, even if objected to at trial and constituting error, will be disregarded by the reviewing court if it does not impact substantial rights and is harmless beyond a reasonable doubt. *See Neder v. United States*, 527 U.S. 1, 7, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). Harmless error is "[a]ny error, defect, irregularity, or variance that does not affect substantial rights," and thus "must be disregarded." Fed. R. Crim. P. 52(a). Under this approach, substantial rights are not affected in situations "where an omitted element is supported by uncontroverted evidence," such as when a defendant concedes the element or makes no attempt to contest it. *Id*. at 18-19. The law, however, is unclear as to whether a harmless error analysis applies when the information fails to allege a required element of the offense, or

---

[8] Because Gilbert was only charged with raping a seventeen year-old, it is not necessary or proper for this Court to determine at this time whether the People are required to prove use of force, intimidation, or abuse of a position of authority to sustain a conviction pursuant to section 1700a with respect to a younger victim. *See United States v. Evans*, 333 U.S. 483, 490-91, 68 S. Ct. 634, 638, 92 L. Ed. 823 (1948) (declining to "decide wholesale" all potential problems stemming from unclear statutory provision because "to resolve it broadside now for all those cases the section may cover, on this indirect presentation, would be to proceed in an essentially legislative manner . . . ."); *see also St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 328 n. 8 (V.I. 2007).

if the failure to allege an element is a fatal defect that requires automatic reversal. *Compare United States v. Keith*, 605 F.2d 462 (9th Cir. 1979) (fatal defect) *with Tollett v. State*, 219 S.W.3d 593 (Tex. App. 2007) (applying harmless error analysis). However, it is unnecessary for this Court to resolve this question because the error in this case affects substantial rights and is not harmless beyond a reasonable doubt.

Here, the errors in the proceedings rise to the level of manifest injustice. Although both the information and the jury instructions omitted mention of the need for an aggravating factor with respect to the aggravated rape counts, the aggravating factors were an issue at trial with respect to count four of the indictment, unlawful sexual contact in the first degree in violation of section 1708(1) of title 14. Under section 1708(1), one may be convicted of unlawful sexual contact if one engages in sexual contact with a person who is not the perpetrator's spouse when force or coercion is used to accomplish the sexual contact.

In its opening statement, the People stated that, to convict Gilbert on the unlawful sexual contact count, it had to establish, beyond a reasonable doubt, that Gilbert used force or coercion to accomplish his sexual contacts. (J.A. at 58.) Likewise, Gilbert's counsel contested this element in his opening statement, and argued that the sex was consensual and no force or coercion had taken place. (J.A. at 62-63.) On the first day of trial, the People introduced photographs into evidence showing scratches on L.M.'s body that the jury could have used to infer that force was used by the perpetrator. (J.A. at 86-87.) Similarly, the People introduced evidence that L.M. was a student in Gilbert's massage class and that Gilbert had invited her to his home for "extra help," and essentially argued that Gilbert had used his position as L.M.'s instructor to coerce L.M. into having sexual contact with him. On the second day of trial, L.M. testified on direct examination that Gilbert forced her against the table, used his weight against her to pin her down, and removed her clothes, at which point he kissed her and subsequently put his finger and penis in her vagina and his mouth on her vagina. (J.A. at 159-62.) Later that day, Gilbert's police statement, in which he admitted to having consensual intercourse with L.M., was introduced through the testimony of the police officer who took his statement. (J.A. at 216-21.) Both the People and the defense rested on the same day and introduced no other

evidence pertaining to the use of force, intimidation or coercion.[9] The following day, the People again stated in closing arguments that Gilbert used force or coercion to accomplish sexual contact with L.M., and Gilbert argued that the People did not meet their burden of proving force or coercion.

■■ Significantly, the jury acquitted Gilbert of the unlawful sexual contact charge, the single count in which they were instructed to determine whether coercion was used. Because Gilbert admitted to having sexual intercourse with L.M., the jury's acquittal on this other charge is only consistent with a verdict of guilty for aggravated rape in the second degree if the jury believed Gilbert's version of events — that the sex was consensual — or did not believe the People proved beyond a reasonable doubt that Gilbert used force or coercion to have sexual contact with L.M. Had the trial court instructed the jury that the People had to prove force, intimidation, or abuse of a position of authority to obtain a conviction for aggravated rape in the second degree, there stands a high probability — given the acquittal on the unlawful sexual contact charge — that the jury would also have acquitted Gilbert of aggravated rape, since both counts stemmed from the same incident and same set of factual circumstances.[10] Since Gilbert's substantial rights were severely impacted, the errors are not harmless beyond a reasonable doubt. Accordingly, this Court shall reverse Gilbert's conviction for aggravated rape in the second degree.

---

[9]    Because this evidence, read in the light most favorable to the People, would support a conviction for aggravated rape in the second degree in the absence of any other errors, the evidence could not be said to be insufficient. However, because other significant errors are present in this case, and the jury did not find beyond a reasonable doubt that Gilbert coerced L.M., it is not necessary for this Court to hold that the evidence was insufficient in order to reverse Gilbert's conviction.

[10]    An inconsistent verdict is not, in and of itself, a sufficient reason to reverse a conviction. *Harris v. Rivera*, 454 U.S. 339, 345, 102 S. Ct. 460, 70 L. Ed. 2d 530 (1981). The grounds for reversal in this case, however, are not the potentially inconsistent verdict. In fact, the verdicts are not truly inconsistent, given the trial judge's erroneous instructions and the contents of the information.

## D. Collateral Estoppel Precludes a Re-Trial for Aggravated Rape in the Second Degree

■ Finally, this Court must determine the appropriate remedy for the errors in this case. It is well established that the remedy for trial error[11] is a new trial while a judgment of acquittal is the appropriate remedy when the evidence is not sufficient to sustain a conviction. *See Burks v. United States*, 437 U.S. 1, 15, 98 S. Ct. 2141, 2149, 57 L. Ed. 2d 1 (1978). Based on the facts of this particular case, this Court holds that the prohibition against double jeopardy guaranteed by both the Revised Organic Act of 1954 and the Fifth Amendment of the United States Constitution[12] precludes the People from re-trying Gilbert for aggravated rape in the second degree pursuant to section 1700a.

■ The United States Supreme Court, in *Ashe v. Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970), held that the rule of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443. In the criminal context, collateral estoppel "will completely bar a subsequent prosecution if one of the facts necessarily determined in the former trial is an essential element of the subsequent prosecution." *United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir. 1997).

■ The United States Court of Appeals for the Third Circuit has long held that collateral estoppel will preclude a retrial on remand when a common required element was determined in the criminal defendant's

---

[11] Trial errors are defined as errors in judicial proceedings, such as "improper instruction, absence of the accused during a portion of the trial, improper hearsay testimony received, and prejudicial instruction; and inadequate record due to failure to record jury instructions." *Burks*, 437 U.S. at 14, n.8 (citations omitted).

[12] "According to the Revised Organic Act 'no person for the same offense shall be twice put in jeopardy of punishment.' " *People v. George*, 49 V.I. 504, 506 (V.I. 2008) (quoting The Revised Organic Act of 1954, § 3, 48 U.S.C. 1561, *reprinted in* V.I. CODE. ANN., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995) (preceding V.I. CODE ANN. tit. 1)). *See also* Revised Organic Act of 1954, § 3 ("The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands to the extent that they have the same force and effect there as in the United States or in any State of the United States . . . the first to ninth amendments inclusive . . . .").

favor through an acquittal on a related charge in the initial proceeding. *See United States v. Venable*, 585 F.2d 71, 77 (3d Cir. 1978). The jury, by acquitting Gilbert of unlawful sexual contact, clearly made a factual determination that the People did not prove beyond a reasonable doubt that Gilbert forced or coerced L.M. Therefore, collateral estoppel would prohibit the People from arguing in a retrial that Gilbert used force or coercion.[13] Consequently, the People may not re-try Gilbert for aggravated rape in the second degree.[14]

## IV. CONCLUSION

Although the plain language of title 14, section 1700a(a) of the Virgin Islands Code would allow a conviction for aggravated rape in the second degree without an aggravating factor, such an interpretation is clearly inconsistent with the Legislature's intent and would lead to unjust and absurd results. Accordingly, in order to convict Gilbert pursuant to section 1700a(a), the People were required to prove beyond a reasonable doubt that he used force, intimidation, or a position of authority to accomplish

---

[13]    This Court acknowledges that section 1700a(a) uses different language than section 1708(1). Notably, section 1700a(a) allows a conviction for aggravated rape in the second degree when an individual uses his position of authority, such as his role as a teacher or instructor, to have intercourse with the victim. However, the use of one's position of authority to achieve such a goal would constitute a form of coercion. Furthermore, given the People's emphasis on Gilbert's role as L.M.'s instructor and its argument that having her come to his apartment for "extra help" was a pretext to initiate sexual relations, the jury, by acquitting Gilbert of unlawful sexual contact, clearly rejected this theory.

[14]    This Court notes that the United States Supreme Court has held that a defendant who is erroneously prosecuted pursuant to the wrong statute, yet whose conduct constitutes a criminal act under a different statute, may be re-tried under the correct offense. *See Montana v. Hall*, 481 U.S. 400, 404, 107 S. Ct. 1825, 1827, 95 L. Ed. 2d 354 (1987). However, such a retrial is only permitted when the offenses have not merged. *Compare Gov't of the Virgin Islands v. Joseph*, 765 F.2d 394, 397 (3d Cir. 1985) (vacating conviction for rape in the third degree, which was not charged in the information, because offense had not merged with charged offense of rape in the first degree and failure to formally allege age element of third degree rape in information altered defendant's trial strategy) with *State v. Midgeley*, 15 N.J. 574, 105 A.2d 844, 847-48 (N.J. 1954) (holding that offense of burning an unoccupied building merges with offense of burning a dwelling house).

However, the issue of whether the offense of rape in the second degree pursuant to section 1702 merges into aggravated rape in the second degree under section 1700a has not been briefed or raised by the parties and is therefore not properly before this Court. *See Daniel*, 49 V.I. at 328 n.8. Accordingly, nothing in this opinion should be construed as allowing or prohibiting the People from submitting a new information charging Gilbert with rape in the second degree under section 1702.

sexual relations with L.M. Since the errors in this case are not harmless, this Court reverses Gilbert's conviction of aggravated rape in the second degree.

## DISSENTING OPINION

SWAN, J., *dissenting*.

I dissent from the majority, and would affirm the jury's verdict convicting Gregory Gilbert ("Appellant") of "Aggravated rape in the second degree," pursuant to title 14, section 1700a(a) of the Virgin Islands Code.

I conclude that because of the pertinent statutory language in the crimes of aggravated rape in the second degree and rape in the second degree, together with the facts in this case, the People of the Virgin Islands ("Appellee") could have charged Appellant with either "Aggravated rape in the second degree," pursuant to title 14, section 1700a(a), or "Rape in the second degree," pursuant to title 14, section 1702(a). Appellee's election to charge Appellant with the crime in section 1700a(a), which carries a more severe penalty than the crime in section 1702(a), and which requires Appellee to meet a less arduous burden of proof for a conviction than the burden of proof for the crime in section 1702(a), does not violate any cognizable constitutional or other legal right of Appellant. Additionally, neither section 1700a(a) nor section 1702(a) has been repealed or has been adjudicated unconstitutional. Importantly, Appellee has a right to exercise its prosecutorial discretion in charging a defendant, as long as the defendant's constitutional or other legal rights are not violated by the exercise of Appellee's prosecutorial discretion. Therefore, I perceive no cogent reason to reverse the jury's verdict. The reasons for my dissent are elucidated below.

## I. FACTS AND PROCEDURAL HISTORY

In June 2005, a seventeen year-old female minor, L.M.[1], commenced classes in massage therapy with Appellant, a twenty-nine year-old massage therapy instructor. During the period of instructions, Appellant informed L.M. that she needed extra lessons in massage therapy;

---

[1]    The victim's identity has been censored, because she was a minor at the time of the incident.

therefore, Appellant invited L.M. to return to his home on a Friday for additional lessons. On the night of Friday, June 24, 2005, L.M. went to Appellant's home for the purpose of receiving the additional lessons that Appellant suggested.

Shortly after L.M. arrived at Appellant's home, L.M. practiced her massage techniques upon Appellant as he sat in a massage chair. After L.M. had completed her practice exercises, Appellant pushed L.M. against a massage table and utilized his weight to restrain and subdue L.M. Appellant proceeded immediately to remove all of L.M.'s clothing. While Appellant was removing L.M.'s clothing, he commented about her lips and her body. Even though L.M. said "no" to Appellant's sexual advances and overtures as she continued to physically resist Appellant's actions, Appellant proceeded to perform oral sex upon L.M., after he had forced her onto the massage table. Eventually, Appellant inserted his finger into L.M.'s vagina and subsequently inserted his penis into her vagina. After Appellant ejaculated on her legs, L.M. was able to retrieve her clothes and her belongings. She proceeded to the entrance door of Appellant's apartment and eventually unlocked it. As she attempted to exit the apartment, Appellant hugged L.M. and told her that she was his girlfriend; therefore, nothing wrong had occurred. Appellant instructed L.M. not to inform anyone about the incident, and he reminded L.M. that the neighbors were unaware of anything occurring between them.

Upon leaving Appellant's residence, L.M. drove directly to her boyfriend's ("G.R.") house. After L.M. informed G.R. that Appellant had raped her, G.R. advised her to go to the hospital. Thereafter, G.R. drove L.M. to the hospital in his truck. After they arrived at the hospital, L.M. called her mother. Because of her emotionally traumatized state, L.M. was unable to speak to her mother; therefore, she gave the phone to G.R., who informed L.M.'s mother that L.M. had been raped. Subsequently, L.M.'s parents arrived at the hospital where they met L.M. and G.R. at the emergency room.

Utilizing a rape kit, the emergency room's medical staff examined L.M. and extracted body specimen from her. A male and a female police officer arrived at the hospital; they interviewed and photographed L.M. After completion of her medical examination, L.M. was discharged from the hospital. Subsequently, L.M. terminated her massage therapy classes with Appellant, because he raped her.

The police officers arrested Appellant. When the officers interrogated Appellant about the rape, Appellant admitted that he had sex with L.M. However, Appellant asserted that the sexual intercourse was consensual, because he was under the distinct impression that L.M. was his girlfriend.

Appellee charged Appellant in a four-count Superseding Information with three counts of "Aggravated rape in the second degree," in violation of title 14, section 1700a(a), as well as one count of "Unlawful sexual contact in the first degree," in violation of title 14, section 1708(1) of the Virgin Islands Code. On November 16, 2007, after a four-day jury trial, Appellant was convicted of one count of "Aggravated rape in the second degree," pursuant to title 14, section 1700a(a), but was acquitted of all other charges. On April 28, 2008, the trial court entered a final judgment, sentencing Appellant to twenty (20) years imprisonment. This appeal ensued.

## II. ISSUE[2]

The issue is whether, under the factual circumstances of this case and without violating Appellant's constitutional and other legal rights, the Virgin Islands Code allows Appellee to lawfully charge Appellant with the crime of "Aggravated rape in the second degree," pursuant to title 14, section 1700a(a), instead of charging him with the crime of "Rape in the second degree," pursuant to title 14, section 1702(a), which imposes a substantially less severe penalty than "Aggravated rape in the second degree."

## III. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code vests in this Court ". . . jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court . . ." On April 28, 2008, the trial court

---

[2] In Appellant's brief, the first two out of three issues state the following: (1) whether Appellant was unconstitutionally convicted because of failure of proof beyond a reasonable doubt; (2) whether Appellant was improperly convicted of Aggravated Rape [in the] Second [Degree] where the evidence did not support the charge; and (3) whether the trial court erroneously instructed the jury on the essential elements of ["A]ggravated rape in the second degree[."] (Appellant's Br. at 7.) However, my dissent from the majority is premised on the statutory interpretation and sentencing variation between title 14, section 1700a(a), "Aggravated rape in the second degree," and title 14, section 1702(a), "Rape in the second degree."

entered a final judgment against Appellant. However, on April 11, 2008, prior to the trial court's April 28, 2008 judgment, Appellant filed a notice of appeal. Generally, "[a] notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." V.I. S. CT. R. 5(b). Therefore, Appellant's Notice of Appeal was filed timely.

## IV. STANDARD OF REVIEW

Appellant questions the legislative intent of section 1700a(a) which defines "Aggravated rape in the second degree." Appellant asserts that Appellee should not be afforded an opportunity to charge him with the more serious of two crimes codified in two individual statutes which charge similarly related crimes. (*See* Appellant's Br. at 15.) Therefore, my review of statutory construction and conclusions of law is plenary. *United States v. Walker*, 473 F.3d 71, 75 (3d Cir. 2007).

## IV. DISCUSSION

Appellant importunes this Court to reverse his conviction. In support of his request, Appellant asserts that "[t]he construction given to section 1700a(a) by the [c]ourt and the prosecution would render section 1702 superfluous or a nullity, or allow the prosecution to charge an offense with more severe penalty, while proving a lesser statutory offense." (Appellant's Br. at 19). I disagree.

The first consideration in interpreting a statute is determining whether a legislative body has employed a language in the statute that is plain and unambiguous. *United States v. Cooper*, 396 F.3d 308, 310 (3d Cir. 2005) (citing *Valansi v. Ashcroft*, 278 F.3d 203, 209 (3d Cir. 2002)); *Marshak v. Treadwell*, 240·F.3d 184, 192 (3d Cir. 2001)). Therefore, "we begin interpreting a statute by examining the literal and plain language of the statute." *Burlington Northern and Santa Fe Ry. Co. v. United States*, 129 S. Ct. 1870, 1879, 173 L. Ed. 2d 812 (2009); *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989); and *Caminetti v. United States*, 242 U.S. 470, 485, 37 S. Ct. 192, 61 L. Ed. 442 (1917); *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 339 (3d Cir. 2009); *Cooper*, 396 F.3d at 310 ("Where the

language of the statute is clear . . . the text of the statute is the end of the matter.") (*citing Steele v. Blackman*, 236 F.3d 130, 133 (3d Cir. 2001) (" 'when the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms.' ")).

First, section 1700a(a) expressly states the following:

> Whoever perpetrates an act of sexual intercourse or sodomy with a person who is under eighteen years but thirteen years or older and not the perpetrator's spouse, *or by force, intimidation, or the perpetrator's position* of authority over the victim is used to accomplish the sexual act, is guilty of aggravated rape in the second degree and shall be imprisoned for life or for any term in years, but not less than 10 years.

(Emphasis supplied). Next, section 1702(a) states the following:

> Any person over 18 years of age who perpetrates under circumstances not amounting to rape in the first degree, an act of sexual intercourse or sodomy with a person not the perpetrator's spouse who is at least 16 years but less than 18 years of age, and the perpetrator is 5 years or older than the victim, is guilty of rape in the second degree and shall be imprisoned no more than 10 years.

Based on the plain and unambiguous language in section 1700a(a), the Virgin Islands Legislature ("Legislature") imposed a more severe penalty for the crime in section 1700a(a) than for the crime in section 1702(a). The reason for the disparity in penalty between the two crimes of rape is that section 1700a(a) addresses aggravated rape and section 1702(a) does not. Significantly, section 1700a is titled "Aggravated rape in the second degree," whereas section 1702 is simply titled "Rape in the second degree." Indisputably, by enacting both sections 1700a and 1702(a), the Legislature endeavored to make a discernable distinction between rape in the second degree involving aggravated circumstances, and rape in the second degree. According to the Merriam-Webster Dictionary of Law, the word, "aggravated" connotes the act, "to make more serious, more severe, or worse." MERRIAM-WEBSTER'S DICTIONARY OF LAW, 20 (Collector's ed. 2005). Undeniably, the word, "aggravated," in the title to section 1700a explicitly makes this section the *more serious* crime than the crime in section 1702(a), even though the crimes in both sections are a form of second degree rape.

370

The following must be considered in further distinguishing both statutes. Regardless of a perpetrator's age, one can violate section 1700a(a), but only a perpetrator over eighteen years of age can violate section 1702(a). A sixteen, seventeen, eighteen, nineteen, or twenty year-old cannot be convicted of violating section 1702(a), because of the element that the victim must be at least sixteen years old, but less than eighteen years of age, and that the perpetrator must be five years or older than the victim. However, the same sixteen, seventeen, eighteen, nineteen, or twenty year-old perpetrator can be convicted of violating section 1700a(a). Moreover, section 1702(a) embodies additional, distinct elements that are absent in section 1700a(a). Section 1702(a) requires that (1) "[a]ny person over 18 year of age who perpetrates under circumstances not amounting to rape in the first degree"; (2)] "an act of sexual intercourse or sodomy with a person not the perpetrator's spouse" (3) "who is at least 16 years but less than 18 years of age, and" (4) "the perpetrator is 5 years or older than the victim" (5) "is guilty of rape in the second degree . . . ."14 V.I.C. 1702(a).

The elements of the crime in section 1700a(a) require that (1) "[w]hoever perpetrates an act of sexual intercourse or sodomy"; (2) "with a person who is under eighteen years but thirteen years or older"; (3) "and not the perpetrator's spouse"; (4) "is guilty of aggravated rape in the second degree . . . ." 14 V.I.C. 1700a(a). The difference in age between the perpetrator and the victim is not an element of the crime in section 1700a(a), which is "Aggravated rape in the second degree." Importantly, the difference in age between the perpetrator of the crime and the victim is a pivotal element of the crime in section 1702(a), which is "Rape in the second degree." Therefore, the elements of each crime are distinct from one another. The fact that there can exist circumstances in which elements in both crimes may overlap with each other, allowing Appellee the option of charging either crime, does not generate any ambiguity between the statutory language of both crimes. More succinctly, the fact that there can exist factual circumstances which allow Appellee to charge a perpetrator with either crime does not make Appellee's election of charging one crime instead of the other a violation of a perpetrator's constitutional or other legal rights.

## A. The Legislature Intended Separate Penalties for Different Degrees of Rape Upon Minors Which Coalesces with the Age of the Victim

Appellant asserts that the Legislature could not have intended a wide disparity between the penalties in sections 1700a(a) and 1702(a). (*See* Appellant's Br. at 15.) I summarily reject Appellant's meritless argument, because the Legislature was obviously cognizant of the Territory's rape statutes when it promulgated both sections 1700a and 1702(a). This contention is buttressed by the structure of the two provisions addressing aggravated rape under the Child Protection Act of 2002, which includes sections 1700(a), and 1700a(a). Furthermore, the Child Protection Act of 2002 also encompasses 1702(a). *See id.* at § 2, 2002 V.I. Sess. Law 3-5. There are discernable different circumstances that would require the prosecutor to charge a perpetrator with "Aggravated rape in the second degree" in section 1700a(a) and to charge a perpetrator with "Rape in the second degree" in section 1702(a); therefore, the Legislature needed to enact both sections. However, in some instances, there could be circumstances of a crime of rape which could be prosecuted under both sections 1700a(a) and 1702(a), allowing the appellee to make an election of which of the two crimes to charge. To reiterate a crucial point on prosecutorial discretion that is expounded upon in Section E of this Dissenting Opinion, Appellee's election of which of the two crimes to charge does not make illegal the election of the crime charged. There is nothing inartfully crafted about the provisions of sections 1700a(a) and 1702(a). The provision of both sections amply inform Appellant of the elements of each crime, and the conduct that is criminal under both sections.

## B. The Age of the Victim is the Aggravating Circumstances in the Rape Statutes

The most cursory examination of Virgin Islands rape statute reveals that the age of the victim is a paramount consideration in determining the severity of the punishment to be imposed for committing each crime. First, section 1700, "Aggravated rape in the first degree," is enacted to protect a class of minors who are under the age of thirteen. *See* 14 V.I.C. § 1700. Second, section 1700a, "Aggravated rape in the second degree," is promulgated to protect a class of minors between the ages of thirteen and under eighteen years. Third, section 1702(a), "Rape in the second

degree," is designed to protect older minors who are between the ages of sixteen but less than eighteen years of age, from a perpetrator who is five years or older than the victim and is not the victim's spouse.

The unavoidable conclusion is that the Legislature intended to impose the severest of penalties for rape committed upon minor victims based on their age. Consider the explicit statutory language for title 14, sections 1700, 1700a(a), and 1702(a). First:

> Whoever perpetrates an act of sexual intercourse or sodomy with a person not the perpetrator's spouse: (1) Who is under the age of thirteen, or (2) who is under sixteen years of age residing in the same household as the perpetrator, *and force, intimidation, or the perpetrator's position of authority over the victim* is used to accomplish the sexual act . . . is guilty of aggravated rape in the first degree and shall be imprisoned for life or for any term of years, but not less than 15 years.

14 V.I.C. § 1700(a). (Emphasis added). Second:

> Whoever perpetrates an act of sexual intercourse or sodomy with a person who is under eighteen years but thirteen years or older and not the perpetrator's spouse *or by force, intimidation, or the perpetrator's position of authority over the victim* is used to accomplish the sexual act, is guilty of aggravated rape in the second degree and shall be imprisoned for life or for any term in years, but not less than 10 years. "Position of authority" shall include, but not be exclusive to the following: an employer, youth leader, scout leader, coach, teacher, counselor, school administrator, religious leader, doctor, nurse, psychologist, guardian ad litem, baby sitter, or substantially similar position, and a police officer or probation officer other than when the officer is exercising custodial control over a minor.

14 V.I.C. § 1700a(a). (Emphasis added). Third:

> Any person over 18 years of age who perpetrates under circumstances not amounting to rape in the first degree, an act of sexual intercourse or sodomy with a person not the perpetrator's spouse who is at least 16 years but less than 18 years of age, and the perpetrator is 5 years or older than the victim, is guilty of rape in the second degree and shall be imprisoned no more than 10 years.

14 V.I.C. § 1702(a).

Further support for the above-mentioned assertions is manifested in the intent and purpose of the Child Protection Act of 2002. Undeniably, the Legislature was preoccupied with protecting the children of this Territory from rape and sexual assault, as reflected in the language of the Child Protection Act of 2002. By enacting this statute, the Legislature expressed the following goals and intentions concerning aggravated rape:

> . . . WHEREAS, sexual assault is one of the most serious and fastest growing violence in the United States and Virgin Islands and
>
> WHEREAS, national statistics and research by the Women's Coalition of St. Croix have disclosed that one out of every three girls and one out of every five boys, will be a victim of some form of sexual assault *before reaching eighteen years of age*; and
>
> WHEREAS, in 85% of reported cases the abuser is someone the *child* knows, often a relative or a family friend; and
>
> WHEREAS, *one in five rape victims is under the age of twelve*; and . . .
>
> WHEREAS, because many of these sexual attacks go unreported and unrecognized, sexual assault, *especially against children, poses a serious threat to the health, safety and welfare of our children*; and
>
> WHEREAS, inasmuch as the *protection and preservation of the health, safety and **well being of the children are our highest priorities***, it is crucial that immediate action is taken to deter the incidence of rape . . .

*Child Protection Act of 2002*, No. 6497, 2002 V.I. Sess. Law 2. (Emphasis supplied). Likewise, the Legislature places a high priority on protecting the welfare of children under the age of eighteen years, which is unquestionably manifested in the imposition of severe penalties for rape or aggravated rape of young minors.

Appellant argues that "[t]he [Superseding I]nformation failed to charge any aggravating factors or circumstances and merely charged that Appellant had sex with L.M., who was 17 years of age and not his spouse." (Appellant's Br. at 14.) However, Appellant's assertion is frivolous and disingenuous, because the fact that L.M. was seventeen

years old is the precise element that makes the crimes aggravated. The aggravating circumstance is the tender age of the victim who is a minor. The age of the victim is one of the differences between sections 1700a and 1702(a). L.M.'s age falls within the age category that constitutes an element of the crime that makes the act of rape an aggravated act under 1700a. Although the elements of the crime in sections 1700a and 1702(a) overlap in terms of the ages of the victims, all of the elements of both crimes are not the same.

Additionally, during several sessions of the 24th Legislature at which the Child Protection Act of 2002 was discussed, some senators expressly stated on innumerable occasions that the purpose of Bill Number 24-0013, the Child Protection Act of 2002, was to amend title 14, Chapter 85, section 1700 to *augment* the penalties for aggravated rape under section 1700. Child Protection Act of 2001: Hearing on Bill Number 24-0013 Before the Legislature, 24th Legislature of the Virgin Islands of the United States, May 10, 2001, 17 - 18 Part III, 39 Part IV; Nov. 14, 2001, 5, 21, 27 (2001); and January 31, 2002, 70 (2002).

Buttressing its intent to augment the penalties for aggravated rape, the Legislature declared the precise purpose of Act. No. 6497 of the Virgin Islands Session Laws and stated the following:

> To enact the Child Protection Act of 2202, amending title 14, chapter 85, section 1700 et seq. to increase the penalties for *aggravated rape* . . .

*Child Protection Act of 2002*, No. 6497, 2002 V.I. Sess. Law 2. (Emphasis supplied). While the foregoing statement specifically mentions its intent to increase penalties for *aggravated rape*, the Legislature made no mention, and did not disturb nor likewise augment the penalties for "Rape in the second degree," under section 1702(a). When the Legislature made the following amendments to section 1702, it retained some of the former statutory language, particularly the penalties. The amendment to section 1702 stated the following:

> Title 14, section 1702 is amended by deleting the existing language and inserting in lieu thereof the following language: '(a) Any person over 18 years of age who perpetrates under circumstances not amounting to rape in the first degree, an act of sexual intercourse or sodomy with a person not the perpetrator's spouse who is at least 16 years but

less than 18 years of age, and the perpetrator is 5 years or older than the victim, is guilty of rape in the second degree and shall be imprisoned not more than 10 years.

(b) Whoever is convicted of any offense under this section shall receive a psychiatric evaluation and participate in psychosocial counseling.

*Id.* at § 2(3), 2002 V.I. Sess. Laws 5.

Under the former section 1700, the Legislature enacted a single statutory scheme for aggravated rape. *See id.* at § 2(1), 2002 V.I. Sess. Laws 3. On February 20, 2002, the Legislature bifurcated the former section 1700 into two statutory provisions by amending the language in section 1700 and adding a new section 1700a. *Id.* at 3-4. The amended, revised section 1700, pertaining to aggravated rape in the first degree, augmented the penalty to a term of imprisonment "for life or for any term of years, but not less than 15 years." *Id.* at 3; 14 V.I.C. § 1700(a). The newly added section 1700a, pertaining to aggravated rape in the second degree, established a term of imprisonment "for a life or for any term in years, but not less than 10 years." *Id.* at 4; 14 V.I.C. 1700a(a).

## C. The Legislative History of Section 1700a(a) Supports its Sentencing Structure

At the legislative hearing on the Child Protection Act of 2002, Sandra Hodge ("Hodge"), a senior family therapist and social worker at the Family Resource Center expressed the following:

Aggravated rape in the second . . . Section 1700[a]. We believe the penalty should be not less than ten years and up to imprisonment for life . . .

*Child Protection Act of 2002*: Hearing on Bill Number 24-0013, Nov. 14, 2001 at 21. Hodge concluded her statements by stating, "[w]e encourage our senators to carefully consider this bill 24-0013 and keep the needs of our children and the larger community in mind." *Id.* at 24. Subsequently, Dr. Iris Kern ("Dr. Kern"), the executive director of a program called Safety Zone also stated the following:

The issue of mandatory minimum incarceration is not a popular one. History, however, has proven that without such minimum, far too

many perpetrators receive sentences so lenient as to discourage victims from reporting.

*Id.* at 27. Irrefutably, these concerns and issues are espoused in the penalty language in section 1700a. Thus, I cannot find any indication that the Legislature erroneously embedded a mandatory minimum sentence in section 1700a. As I have demonstrated, in addressing the matter of rape in the second degree, which encompasses the crimes of aggravated rape in the second degree and rape in the second degree, the Legislature contemplatively regarded section 1702(a), "Rape in the second degree," to be a less serious offense than section 1700a, "Aggravated rape in the second degree." Therefore, the assertion that there is a significant disparity between sections 1700a(a) and 1702(a) is precisely what the Legislature intended. Similarly, in addressing the crime of rape, the Legislature purposefully and adroitly crafted section 1700a with the intent of imposing a more severe penalty for its violation than a penalty for a violation of section 1702(a).

Appellant takes umbrage because Appellee elected to charge him with the more severe of the two crimes enacted by the Legislature. Appellant is reminded that if he takes exception to Appellee's prosecutorial discretion on which of the two crimes to charge, it is for the Legislature, and not the courts, to amend the statutes to eliminate Appellee's prosecutorial discretion.

### D. Appellant's Conviction for Aggravated Rape in the Second Degree was Proper

I concluded that the Legislature's intention of protecting children is manifested in the language of section 1700a(a) and that Appellee was well within its discretion to prosecute Appellant under section 1700a(a). Therefore, I will now address the elements of section 1700a(a) to explicate why the jury properly convicted Appellant of aggravated rape in the second degree.

Appellant asserts that the trial court erroneously instructed the jury on Count Two of the Superseding Information. (Appellant's Br. at 17.) Essentially, Count Two of the Superseding Information States the following:

[Appellant], did perpetrate an act of sexual intercourse with a person who is under eighteen (18) years, but thirteen years or older, and not

his spouse, namely, L.M., who was seventeen (17) years old at the time, by inserting his penis into L.M.'s vagina, in violation of Title 14 V.I.C. § 1700(a), (AGGRAVATED RAPE IN THE SECOND DEGREE).[3]

(Superseding Information, J.A. at 17.) At trial, the court specifically instructed the jury as follows:

Count Two: In Count Two of the Information, [Appellant] is charged with [a]ggravated [r]ape in the [s]econd [d]egree, a violation of Title 14 V.I.C. Section 1700a(a). Under the laws of the Virgin Islands, whoever perpetrates an act of sexual intercourse with a person who is under 18 years, but 13 yea[r]s older and not the perpetrator's spouse is guilty of the crime of [a]ggravated [r]ape in the [s]econd [d]egree.

Before you may find [Appellant] guilty of [a]ggravated [r]ape in the [s]econd degree, you must find that the People have proven each of the following essential elements beyond a reasonable doubt:

1. That [Appellant] did perpetrate an act of sexual intercourse with L.M. by inserting his penis into L.M.'s vagina;

2. That L.M. was under the age of 18, but 13 years or older;

3. That [Appellant] is not the spouse of L.M.; and

4. That the offense took place on the Islands of St. Croix on or about June 25, 2005.

If you decide that the People have proved each element beyond a reasonable doubt, then you must find [Appellant] guilty. Otherwise, you must find [Appellant] not guilty.

(Trial Tr., Vol. III, 53, Nov. 15, 2007.)

Appellant asserts that "[t]he [c]ourt improperly instructed the jury that the government only need prove the above four elements without proving any aggravating factor whatsoever." (Appellant's Br. at 17.) However,

---

[3] Appellee erroneously refers to aggravated rape in the second degree as Title 14 V.I.C. § 1700(a). However, the correct code is section 1700a(a).

Appellant's argument is incomprehensible. The trial court recited the elements of the crime embedded in the statutory language of section 1700a(a). Even though section 1700a is titled "Aggravated rape in the second degree," there is nothing in the language of the statute that explicitly refers to an aggravating factor. Therefore, a separate aggravating factor is not an element of "Aggravated rape in the second degree." Moreover, the Legislature eschewed any such inclusion in the statute. Essentially, the statute simply defines the elements that constitute "Aggravated rape in the second degree." Accordingly, all that Appellee was required to prove were the aforementioned elements in the statutory language, because those are the elements that comprise the crime in section 1700a(a).

### E. The Government may Exercise its Prosecutorial Discretion Concerning what Statutory Provision it Could use to Charge a Defendant

Appellant asserts that "Appellant should have . . . been charged with a violation of section 1702 rather than [a]ggravated [r]ape second under section 1700a(a). Otherwise, [s]ection 1702 is of no meaning." (Appellant's Br. at 15.) I find no legal infirmity where the Legislature allows Appellee an option to choose which crimes it may elect to charge a defendant. Noting that the penalty disparity between section 1700a(a) and 1702(a) is immense, Appellant also argues that Appellee's option to prosecute Appellant under the more severe section 1700a(a) would result in "absurd consequences and injustice." (Appellant's Br. at 15.) Appellant's contention is specious.

Additionally, as illustrated below, ample case law precedent concludes that Appellant advances an unprecedented farcical argument. The United States Supreme Court ("the Supreme Court") has long recognized that "when an act violates more than one criminal statute, the [g]overnment may prosecute under either so longer as it does not discriminate against any class of defendants." *United States v. Batchelder*, 442 U.S. 114, 123, 24, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by the statute, the decision . . . [on] what charge to file or bring . . . rests entirely on his discretion." *United States v. Moore*, 543 F.3d 891, 899 (7th Cir. 2008) (*citing United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotations omitted)). Therefore, the fact that Appellant

could have been charged under another statute with a less severe penalty is irrelevant, as long as he is lawfully charged under a properly promulgated statute which has no constitutional infirmities.

It is noteworthy that "[t]he discretion a prosecutor exercises when he decides what, if any, charges to bring against a criminal suspect . . . is an integral feature of the criminal justice system, and is appropriate, so long as it is not based upon improper factors." *United States v. F.S.J.*, 265 F.3d 764, 769 (9th Cir. 2001) (citing *United States v. LaBonte*, 520 U.S. 751, 762, 117 S. Ct. 1673, 137 L. Ed. 2d 1001 (1997) (internal quotations omitted)); *United States v. Navarro-Vargas*, 408 F.3d 1184, 1213 (9th Cir. 2005). Here, Appellant does not argue, nor is there an issue of whether Appellant selected the statute with a harsher penalty as a result of discrimination or any other improper factors. The United States Court of Appeals for the Ninth Circuit has emphasized that courts must give "extreme deference" to prosecutorial charging decisions. *F.S.J., supra* at 769.

## V. CONCLUSION

Undeniably, the design and structure of sections 1700, 1700a(a), and 1702(a) were established to protect minors under the age of eighteen years old. The sentencing disparity between section 1700a(a) and section 1702(a) is completely irrelevant to one another. While section 1702(a) is titled "Rape in the second degree," section 1700a(a), a more serious crime, is titled "Aggravated rape in the second degree."

Although the age discrepancy in sections 1700a(a) and 1702(a) slightly overlaps, Appellee may exercise its prosecutorial discretion and choose which of the above-mentioned statutes and crimes it prefers to use in charging Appellant. To prosecute Appellant, Appellee selected the crime in section 1700a(a), a more serious crime than the crime in section 1702(a), and which requires a lesser burden than the crime in section 1702(a). Moreover, I conclude that the trial court properly instructed the jury on the elements of the crime of "Aggravated rape in the second degree." Therefore, I find no plausible reason to reverse the jury's verdict. I would affirm the jury verdict and the trial court's judgment.